UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

KAREN MCCARTY,

     Plaintiff,

v.                                                                                  No. 1:22-CV-170-H

GLEN TEAL, et al.,

     Defendants.

### MEMORANDUM OPINION AND ORDER

Karen McCarty—a fifth-grade math teacher formerly employed by the Jim Ned Consolidated Independent School District (the District)—was terminated by the District's Board of Trustees in April 2021.  She subsequently sued Principal Alana McClure, Superintendent Glen Teal, and the District itself, asserting various claims under both the Texas Constitution and 42 U.S.C. § 1983.  Specifically, McCarty alleges that the defendants unconstitutionally retaliated against her for exercising her rights to free speech and free association by posting comments related to the District's post-COVID-19 masking policies.

After McCarty filed her First Amended Complaint, the defendants filed their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. No. 15. The Court denies the motion in part and grants it in part.  Because McCarty has plausibly alleged (1) that her termination was caused by the comments she posted to Facebook in July 2020; and (2) that, in posting those comments, she was speaking as a citizen on a matter of public concern, the Court denies the defendants' motion as to her claims against (a) McClure and Teal in their official capacities under the Texas Constitution; and (b) McClure and Teal in their individual capacities under Section 1983.  Additionally, because McCarty has plausibly alleged that the District merely "rubber stamped" McClure

and Teal's recommendation to terminate her, the Court also denies the defendants' motion as to her claim against the District under Section 1983.

On the other hand, because McCarty has failed to plausibly allege that prospective injunctive relief would be appropriate in connection with her claim predicated on McClure's appraisal of her, the Court grants the defendants' motion as to that claim. Similarly, the Court grants the defendants' motion as to McCarty's censorship claim because it is predicated on a legal conclusion supported only by an inapposite case.

## 1.    Factual and Procedural History[1]

By July 2020, Plaintiff Karen McCarty—an experienced public-school teacher—was getting ready to begin her third year working as a fifth-grade math teacher for the District. *See* Dkt. No. 12 ¶¶ 11, 12, 14, 17, 24. Just a few months prior, in April 2020, McCarty had earned "the highest possible overall rating of 'Distinguished'" in her year-end performance evaluation for the 2019–2020 school year. *See id.* ¶ 16. By January 2021, however, things had changed for McCarty. Her performance ratings "fell from . . . the two highest ratings in every dimension to . . . the two lowest ratings in every dimension, except one." *Id.* ¶ 18 (cleaned up). These were the lowest scores McCarty had ever received as an employee of the District. *See id.* ¶¶ 13, 18. Such a significant drop after just one semester raises the question: What changed between April 2020 and January 2021?

For one thing, the District hired a new principal for Jim Ned Elementary— Defendant Alana McClure. *Id.* ¶ 20. As principal, McClure was in charge of supervising and appraising Jim Ned Elementary teachers—including McCarty—for the 2020–2021

---

[1] The following statement of facts is based solely on the allegations contained in McCarty's First Amended Complaint because the Court—at the motion-to-dismiss stage—is required to accept all well-pleaded facts as true. *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015).

school year.  *Id.* ¶ 21.  The Texas Administrative Code provides certain standards to which appraisers like McClure are obligated to adhere when evaluating the performance of public-school teachers.  *See id.* ¶¶ 29–32.  However, in evaluating McCarty, McClure deviated from these standards on multiple occasions.  For instance, in her January 2021 written evaluation of McCarty's performance, McClure observed that students had been disrespectful to McCarty "in places outside of the classroom."  *Id.* ¶ 29.  This "outside" data wound up lowering McCarty's performance ratings.  *See id.*  Additionally, despite giving assurances to the contrary, McClure never held a follow-up observation of McCarty or reevaluated her. *See id.* ¶¶ 30–31.  Similarly, McClure failed to give McCarty "an 'end-of-year conference' or 'a written summative annual appraisal report' for the 2020–2021 school year."  *Id.* ¶ 32.

Before her evaluation, McCarty's first interaction with McClure—a phone call—took place on July 27, 2020.  *See id.* ¶ 25.  Initially, McCarty "thought [McClure] was calling to introduce herself."  *Id.*  As it turned out, however, McClure was actually calling to ask McCarty about several comments that had been posted to Facebook earlier that month.  *See id.* ¶¶ 24–25.  Specifically, McCarty had posted the following statement on the "Texas Teacher for a Safe Reopening" private Facebook page[2] just a few weeks earlier: "We are having a going away party for our school's principal.  Would you feel safe going if masks were not required?"  *See id.* ¶ 24.  Shortly thereafter, McCarty began posting additional comments to the group's Facebook page, including one that stated, "We're not required to wear masks if we go to the campus to work.  If everyone would wear a mask, we could get back to 'normal' a lot faster."  *Id.*  Notably, McCarty posted these comments to the group's

---

[2] The "Texas Teacher for a Safe Reopening" private Facebook group was created on July 6, 2020. Dkt. No. 12 ¶¶ 22, 25.  The group's Facebook page "was meant to be a forum for the discussion of" the safe reopening of schools across Texas after COVID-19.  *Id.* ¶ 23.

Facebook page *after* Texas Governor Greg Abbott had "issued an executive order requiring masking when inside a building in the state, including schools." *See id.* ¶¶ 24–25.

After confirming that McCarty had indeed posted the above-described comments, McClure "verbally reprimanded" her and told her that she "should know better." *Id.* ¶ 25. Ultimately, after being "counseled" by McClure, McCarty "ceased posting to the [group's Facebook page] and generally avoided commenting on controversial topics altogether." *Id.* Nevertheless, McCarty continued to face backlash from District administrators. *See id.* ¶ 26. On one occasion, District Superintendent Glen Teal—who knew about McCarty's Facebook posts—excluded her from "a teambuilding exercise with all the teachers and staff." *Id.* Several months later, "Teal made a vailed [sic] threat of retaliation to [McCarty] based on her earlier speech" (i.e., the Facebook posts). *See id.*

Things between McCarty, McClure, and Teal reached a breaking point on April 1, 2021, when McClure informed McCarty that she and Teal had decided to terminate McCarty's employment with the District. *See id.* ¶ 33. When McCarty asked McClure why she was being fired, McClure responded by telling McCarty that she "was not a 'good fit.'" *Id.* However, during this conversation, McClure "assured [McCarty] that she thought [McCarty] was a good Math teacher." *Id.* After McCarty refused to resign, Teal presented his and McClure's recommendation that she be fired to the District's Board of Trustees. *Id.* ¶ 34. Subsequently, the District's Board of Trustees acted not on their own accord but rather "on the recommendations of Superintendent Teal and Principal McClure . . . by voting . . . to terminate [McCarty]." *Id.* McCarty does not know what explanation—if any—Teal provided to the District's Board of Trustees that night because "neither [she] nor anyone representing her interest was invited to" participate in the discussion. *See id.*

– 4 –

However, McCarty later learned that the District's Board of Trustees had fired more than

one teacher that night "based on Teal's recommendation." *See id.*

In response to McCarty's First Amended Complaint (the Complaint) (Dkt. No. 12),

the defendants—McClure, Teal, and the District—filed their Motion to Dismiss under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Dkt. No. 15 at 1. McCarty

responded (Dkt. No. 16), and soon after the defendants filed their reply (Dkt. No. 27).

Accordingly, the defendants' Motion to Dismiss is ripe for resolution.

**2.    Standards of Review**

**A.    Rule 12(b)(1) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a

claim for a lack of subject matter jurisdiction. "When a Rule 12(b)(1) motion is filed in

conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1)

jurisdictional attack before addressing any attack on the merits." *Willoughby v. United States*

*ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (quoting *Ramming v. United*

*States*, 281 F.3d 158, 161 (5th Cir. 2001)).

The plaintiff "bears the burden of proof that jurisdiction does in fact exist."

*Ramming*, 281 F.3d at 161. When a motion to dismiss under Rule 12(b)(1), as here, is based

on the face of the complaint and does not incorporate external evidence, "the trial court is

required merely to look to the sufficiency of the allegations in the complaint because they

are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981).

Additionally, a court lacks subject matter jurisdiction when governmental immunity bars

suit. *See In re USA Promlite Tech. Inc.*, 636 B.R. 743, 755 (Bankr. S.D. Tex. 2022); *Alamo*

*Forensic Servs., L.L.C. v. Bexar County*, 861 F. App'x 564, 568 (5th Cir. 2021).

**B.      Rule 12(b)(6) Motion to Dismiss.**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a motion to dismiss, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (alterations in original) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). But the Court need not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Additionally, a motion to dismiss pursuant to Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation omitted).

**3.      Analysis**

**A.      Some, but not all, of McCarty's state-law claims against McClure and Teal survive the defendants' motion to dismiss.**

In the Complaint, McCarty asserts various claims against the District, Teal, and McClure based on alleged violations of state statutory and constitutional provisions. Dkt. No. 12 at 13–16. In their motion to dismiss, the defendants argue—among other things— that each of McCarty's state-law claims should be dismissed. *See* Dkt. No. 15 at 3–6. Specifically, they contend that the Court lacks subject matter jurisdiction over those claims because—as explained more thoroughly below—none of the claims fall under the *ultra vires* exception to governmental immunity. *See id.*; *see also* Dkt. No. 27 at 5–8.

Under Texas law, public school districts are generally entitled to governmental immunity.  *See El Paso Indep. Sch. Dist. v. McIntyre*, 584 S.W.3d 185, 196 (Tex. App.—El Paso 2018, no pet.).  Similarly, public school district employees are typically protected by immunity when sued in their official capacities because they enjoy "the same governmental immunity, derivatively, as [their] government employer."  *Cf. Tex. A&M Univ. v. Starks*, 500 S.W.3d 560, 566, 570, 572 (Tex. App.—Waco 2016, no pet.) (citing *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011)) (describing a university professor as a government employee).[3]  However, plaintiffs who can successfully plead their claims under the *ultra vires* exception to governmental immunity may nevertheless bring suit against public school district employees in their official capacities.  *See McIntyre*, 584 S.W.3d at 198–99.

"To fall within th[e] *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."  *Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203, 213 (5th Cir. 2020) (alteration in original) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)).  A ministerial act is a non-discretionary obligation imposed on a government official by statute.  *See Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015).  Additionally, *ultra vires* claims "cannot be brought against the state, which retains immunity, but must be brought against . . . state actors in their official capacity."  *Heinrich*, 284 S.W.3d at 373.  In the instant case, McCarty contends that three of her claims against McClure and Teal fall within the *ultra vires*

---

[3] Although university professors are in some ways distinguishable from public school district employees, courts have similarly treated the latter as government employees. *See McIntyre*, 584 S.W.3d at 188, 196, 198.  Additionally, the parties in this case do not dispute McCarty's classification of McClure and Teal as government employees.  *See* Dkt. No. 15 at 4–5.

exception.  *See* Dkt. No. 16 at 6–7; *see also* Dkt. No. 27 at 6–8.  The Court addresses each of these claims in turn.

### i.     McCarty's appraisal claim fails to state a claim under the *ultra vires* exception to governmental immunity because she does not seek prospective relief.

In her first claim, McCarty alleges that McClure acted *ultra vires* when she "deviated from the legal standards adopted for the appraisal of public classroom teachers . . . by failing or refusing to give [McCarty] a final year-end appraisal."  Dkt. No. 16 at 6–7.  Specifically, McCarty asserts that McClure's failure to give her "an 'end-of-year conference' or 'a written summative annual appraisal report'" violated 19 Tex. Admin. Code § 150.1003(b)(7)–(8).  Dkt. No. 12 ¶ 32.  However, the defendants respond that even if McCarty "allege[s] that this constituted a failure to perform a ministerial act . . . the relief sought belies the claim's status as an *ultra vires* claim."  Dkt. No. 27 at 6–7 (italics added).  The Court agrees.[4]

First, an essential requirement for an *ultra vires* claim is that the relief sought must be prospective.  *City of Austin v. Util. Assocs., Inc.*, 517 S.W.3d 300, 308–09 (Tex. App.—Austin 2017, pet. denied).  Furthermore, plaintiffs bringing *ultra vires* claims "ha[ve] the burden of demonstrating . . . that an injunction . . . restraining future violations would be appropriate."  *PermiaCare v. L.R.H.*, 600 S.W.3d 431, 444–45 (Tex. App.—El Paso 2020, no pet.) (concluding that a plaintiff who "properly pled that . . . [o]fficials engaged in past violations of their ministerial duties" had nevertheless failed to properly plead an *ultra vires*

---

[4] McCarty appears to make various other assertions based on McClure's alleged failure to perform ministerial acts.  For example, McCarty seemingly asserts that McClure previously violated 19 Tex. Admin. Code § 150.1003(b)(4), (f) by using outside data "to lower [McCarty's] observation rating."  *See* Dkt. No. 12 ¶ 29.  Additionally, McCarty appears to assert that McClure previously violated 19 Tex. Admin. Code § 150.1004(c), (d), (f), (g) by "never [holding] a follow-up observation or evaluation" of McCarty.  *See* Dkt. No. 12 ¶ 30.  However, for the reasons set forth below, these claims also fail to fall within the *ultra vires* exception.

claim); *see also Johnson v. Cullens*, No. 07-21-00093-CV, 2022 WL 714074, at *2 (Tex. App.—Amarillo Mar. 7, 2022, pet. denied) (explaining that a "plaintiff bringing an ultra vires claim must affirmatively allege facts to support a finding that he faces an ongoing violation of his rights, and it is insufficient to merely allege that his rights were violated in the past").

In *PermiaCare*, for example, the plaintiff claimed that officials of a mental health authority and community center acted *ultra vires* by, among other things, not allowing her to participate in the development and review of her treatment plan. 600 S.W.3d at 440, 445. The plaintiff alleged that the defendants violated their duty "on at least two occasions when they created new treatment plans for her in September of 2016 and again in February of 2018." *Id.* at 445. However, the plaintiff had the burden of "demonstrating that the [o]fficials were engaging in *ongoing* violations of their ministerial duties." *Id.* at 444 (emphasis added). The complaint only alleged the past violations of the duty, and the conclusory allegation that the defendants "'continue[d]' to violate their duty" was not supported by additional facts. *Id.* at 445. Thus, the court concluded that the plaintiff failed to show that she was entitled to prospective injunctive relief because there was no future violation to restrain. *See id.* at 444–45.

Here, even assuming McCarty properly alleges that McClure's conduct related to appraisals constitutes a failure to perform ministerial acts, she fails to state a claim under the *ultra vires* exception because her pleadings do not support a finding that prospective relief is appropriate. In connection with this claim, McCarty seeks an injunction that would require McClure to "complete [McCarty's] appraisal in a nonretaliatory fashion." *See* Dkt. No. 12 ¶ 68. However, the factual events that McCarty pleads to demonstrate McClure's alleged failure to perform ministerial acts all took place during the 2020–2021 school year. *See id.*

¶¶ 27, 29–32 ("[McCarty] was never given an 'end-of-year conference' or 'a written summative annual appraisal report' for the 2020–2021 school year.").  Therefore, like the plaintiff in *PermiaCare*, McCarty's pled facts—even taken as true—only demonstrate prior violations of McClure's ministerial appraisal duties.  *See PermiaCare*, 600 S.W.3d at 444.  Accordingly, McCarty has failed to plead her appraisal claim as *ultra vires* because her "pleadings in their current form are insufficient to support a finding . . . that she is entitled to prospective injunctive relief."  *See id.* at 445.

> ii.   **McCarty fails to plead her censorship claim as *ultra vires* because it is predicated on a legal conclusion.**

In her second claim, McCarty alleges that McClure acted *ultra vires* when she "went beyond her lawful authority in directing [McCarty] to cease speaking out, as a private citizen, on a matter of public concern."  *See* Dkt. No. 16 at 7 (citing Dkt. No. 12 ¶ 25).  McCarty cites only *Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931), to support her assertion that McClure "[was] not authorized to censor or issue prior restraints on a teacher's protected speech."  Dkt. No. 16 at 7.  However, McCarty's reliance on *Near* is misplaced for several reasons.

In *Near*, the Supreme Court was tasked with assessing the constitutionality of a state statute that made "producing, publishing or circulating . . . a malicious, scandalous and defamatory newspaper" a nuisance capable of being enjoined.  283 U.S. at 701–02, 707.  Ultimately, the Supreme Court found the statute at issue "to be an infringement of the liberty of the press guaranteed by the Fourteenth Amendment."  *Id.* at 722–23.  In contrast, the present case involves neither the freedom of the press nor a challenge to the constitutionality of a state statute.  *See* Dkt. No. 12.  Additionally, nothing in *Near* indicates that its holding should be construed as being applicable to cases involving public school

– 10 –

districts or their employees.  *See generally Near*, 283 U.S. at 701–23.  Accordingly, McCarty's argument that McClure acted *ultra vires* when she allegedly "censored [McCarty's] speech and instructed her to discontinue that speech," Dkt. No. 16 at 7, is a legal conclusion that the Court is "not bound to accept as true" when considering the defendants' motion to dismiss.  *Alfred v. Harris Cnty. Hosp. Dist.*, 666 F. App'x 349, 352 (5th Cir. 2016) (quoting *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015)).  And because plaintiffs are required to go beyond "[m]erely asserting legal conclusions" in order to successfully plead *ultra vires* claims, McCarty fails to plead her censorship claim as *ultra vires*.  *See Univ. of Tex. of the Permian Basin v. Banzhoff*, No. 11-17-00325-CV, 2019 WL 2307732, at *4 (Tex. App.—Eastland May 31, 2019, no pet.) (citing *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.)).

> ### iii.   McCarty has sufficiently pled her retaliation claims as *ultra vires* because she alleges facts capable of supporting each of their elements.

In her third claim, McCarty alleges that McClure and Teal acted *ultra vires* when they violated her rights under Article I, Section 8, of the Texas Constitution.[5]  *See* Dkt. Nos. 12 ¶¶ 56–58; 16 at 6–7.  Specifically, McCarty asserts that McClure and Teal—in recommending her termination to the Board—unconstitutionally retaliated against her for exercising her rights to free speech and free association.  *See* Dkt. No. 16 at 6–7, 17–18.

To overcome an official's governmental immunity through the *ultra vires* exception, plaintiffs alleging violations of the Texas Constitution "must plead a facially valid

---

[5] Here, because the parties "have not argued that differences in state and federal constitutional guarantees are material to the case, and none [are] apparent," the Court is able to "limit [its] analysis to the First Amendment and simply assume that its concerns are congruent with those of article I, section 8." *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002).

constitutional claim." *See Starks*, 500 S.W.3d at 571; *see also Klumb v. Houston Mun. Employees Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015) (discussing *ultra vires* claims and noting that "immunity from suit is not waived if the constitutional claims are facially invalid" (citation omitted)).

To prevail on a free-speech retaliation claim brought against a government employer, government employees must ultimately prove that "(1) [they] suffered an adverse employment action, (2) [their] speech involved a matter of public concern, (3) [their] interest in speaking outweighed [their employer's] interest in promoting efficiency, and (4) the protected speech motivated [their employer's] conduct." *See Starks*, 500 S.W.3d at 572–73 (first citing *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011); and then citing *Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 244 (Tex. App.—El Paso 2012, no pet.)).  In their motion to dismiss, the defendants contend that McCarty's pled facts are incapable of supporting the second and fourth elements.[6]  *See* Dkt. No. 15 at 8–10.

### a.   McCarty plausibly alleges that she spoke as a citizen on a matter of public concern.

Plaintiffs pleading First Amendment retaliation claims are required to provide "specific instances of speech."  *See Banik v. Tamez*, No. 16-CV-00462, 2017 WL 4173630, at

---

[6] Although the defendants only challenge the second and fourth elements of McCarty's free-speech retaliation claim, *see* Dkt. No. 16 at 8, the Court finds that her alleged facts are capable of supporting the first and third elements as well.  The parties do not dispute McCarty's allegation that she was terminated.  *See* Dkt. No. 27 at 12.  In the Fifth Circuit, it has long been established that such a termination constitutes an "[a]dverse employment action[]" for the purposes of a First Amendment retaliation claim.  *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Pierce v. Tex. Dep't of Crim. Just., Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)).  As to the third element, "at the motion-to-dismiss stage of a case, there is a rebuttable presumption that no balancing is required to state a claim." *Burnside v. Kaelin*, 773 F.3d 624, 628 (5th Cir. 2014) (citation omitted).  And because the defendants have not proffered any arguments to rebut this presumption, *see* Dkt. No. 15, the Court finds that McCarty has alleged facts capable of supporting the third or "balancing" element of her claim.  *See Burnside*, 773 F.3d at 628.

*2 (S.D. Tex. Sept. 21, 2017) (quoting *Rodriguez v. City of La Villa*, No. 13-CV-400, 2014 WL 1600306, at *3 (S.D. Tex. Apr. 21, 2014)).  In the present case, McCarty provides specific instances of speech in the form of two Facebook posts.  *See* Dkt. No. 12 ¶ 24.  Before the 2020–2021 school year began, McCarty alleges that she posted the following message (the First Post) on the Texas Teachers for a Safe Reopening Facebook page: "We are having a going away party for our school's principal.  Would you feel safe going if masks were not required?"  *Id.* (italics omitted).  McCarty also alleges that she made other posts to the group's Facebook page, including one (the Second Post) that stated, "We're not required to wear masks if we go to the campus to work.  If everyone would wear a mask, we could get back to 'normal' a lot faster."  *Id.*  As the only two "specific instances of speech" alleged in the pleadings, the Court looks to these posts to determine whether McCarty's speech addresses a matter of public concern.  *See Tamez*, 2017 WL 4173630, at *2.

The defendants assert that McCarty "has failed to adequately allege that her speech was as a citizen and involved a matter of public concern."  Dkt. No. 15 at 9.  In accordance with the Fifth Circuit's approach in *Gibson v. Kilpatrick* (*Gibson III*), the Court first addresses whether McCarty "spoke as a citizen or an employee" and then determines whether she "spoke on a matter of public concern."  838 F.3d 476, 481–82, 481 n.1 (5th Cir. 2016).

### 1.   McCarty plausibly alleges that she spoke as a citizen, not an employee.

In *Garcetti v. Ceballos*, the Supreme Court established that government employees do not speak as citizens when they make statements pursuant to their official duties.  547 U.S. 410, 421 (2006).  Precedent "focus[es] on 'the scope of [] ordinary job responsibilities' as the critical factor for whether speech was made as an employee or a citizen."  *See Gibson III*, 838 F.3d at 482 (alterations in original) (quoting *Lane v. Franks*, 573 U.S. 228, 238 (2014)).

– 13 –

Following in the Supreme Court's footsteps, the Fifth Circuit in *Gibson III* determined that a former police chief spoke as a citizen when he sued his former supervisor.  *See id.* at 480–82.  There, a former police chief brought a First Amendment retaliation claim against the city, "alleging that he was fired for suing the mayor."  *Id.* at 480–81.  The court noted that the police chief "had no obligation to sue" the mayor and ultimately found that, in doing so, he had spoken as a citizen because "suing one's supervisor . . . is not part of [a police chief's] job description."  *Id.* at 482; *see also Davis v. McKinney*, 518 F.3d 304, 316 (5th Cir. 2008) (concluding that a plaintiff's speech that "ha[d] nothing to do with her job function" was made as a citizen).

Additionally, in considering whether speech falls within the scope of a government employee's ordinary job responsibilities, courts "may 'review a number of factors' on this point, 'including the internal versus external nature of the speech . . . and whether the speech resulted from special knowledge gained as an employee.'"  *See Jones v. Matkin*, 623 F. Supp. 3d 774, 784 (E.D. Tex. 2022) (quoting *Harris v. Noxubee County*, 350 F. Supp. 3d 592, 599 (S.D. Miss. 2018)).  For example, in *Jones*, a district court determined that a public university professor spoke as a citizen and not an employee when she posted statements related to her employer's pandemic-reopening plan on social media.  *See id.* at 784–85.  There, the court acknowledged that "[teachers] are uniquely qualified to comment" on post-pandemic campus procedures.  *See id.* at 784 (alteration in original) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004)).  Furthermore, the court recognized that by posting her concerns to social media, the professor "took her 'job concerns to persons outside the workplace.'"  *See id.* at 785 (quoting *Davis*, 518 F.3d at 313).  After considering the factors

on point, the court found that the professor made her posts "as a citizen, not an employee." *See id.* (quoting *Davis*, 518 F.3d at 313).

Here, McCarty has plausibly alleged that she was speaking as a citizen rather than an employee when she posted her comments on a Facebook forum.  In the Complaint, she alleges that she made the posts after the District assigned her "to teach 5th grade math and science" for the 2020–2021 school year.  *See* Dkt. No. 12 ¶¶ 17, 22–24.  Additionally, she asserts that the "Facebook posts . . . were not made pursuant to her official duties or as part of her job responsibilities." *Id.* ¶ 48.  And while the Court is "not bound to accept as true a legal conclusion couched as a factual allegation" when considering a 12(b)(1) motion to dismiss, *Machete Prods., L.L.C.*, 809 F.3d at 287 (cleaned up), it must nevertheless make "all reasonable inferences . . . in the plaintiff's favor," *Haverkamp v. Linthicum*, 6 F.4th 662, 668–69 (5th Cir. 2021).  The Court finds it reasonable to infer that, like the former police chief in *Gibson III*, McCarty has plausibly alleged that she was not obligated—by virtue of her employment as a fifth-grade teacher—to make Facebook posts related to the pandemic. *See* Dkt. No. 16 at 16 (citing Dkt. No. 12 ¶ 48) ("To be clear, no part of [McCarty's] job as a teacher required her to . . . post questions and concerns to Facebook or otherwise speak out on the District's masking practices.").  Additionally, like the professor in *Jones*, McCarty, as a teacher, was qualified to comment on the District not requiring its employees to wear masks while on campus and took her concerns to people outside of the workplace by posting them to Facebook.  Accordingly, the Court concludes that, when viewed in the light most favorable to McCarty, she has adequately alleged that she was speaking as a citizen when she made the two Facebook posts.

### 2.   McCarty plausibly alleges that she spoke on a matter of public concern.

Speech made by a government employee addresses a matter of public concern if it relates to an issue "of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."[7]  *Id.* at 147–48. A government employee's speech is "mixed" if it "contains elements of both personal and public concern." *See Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005) (citation omitted). McCarty's speech "include[s] an element of personal concern" because the Second Post describes a situation (i.e., the District not requiring its employees to wear masks on campus) that "affected the conditions of [her] employment." *See id.* (citations omitted). Accordingly, McCarty's speech is mixed, and the Court must next analyze its content, form, and context. *See id.* (citation omitted).

McCarty argues that the content of her speech demonstrates that it is on a matter of public concern "because [her speech] is 'related to improper acts by public officers.'" *See* Dkt. No. 16 at 9 (quoting *Branton v. City of Dallas*, 272 F.3d 730, 739–40 (5th Cir. 2001)). In their reply, the defendants attempt to undermine McCarty's argument by pointing out "the

---

[7] In *Gibson III*, the Fifth Circuit explained that it would weigh context and form "more heavily" in cases involving mixed speech. *See Gibson III*, 838 F.3d at 487 (quoting *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999)). However, in *Kennedy v. Tangipahoa Parish Library Board of Control*, the Fifth Circuit unequivocally criticized this approach. *See* 224 F.3d 359, 375 n.18 (5th Cir. 2000) ("[N]o Supreme Court or Fifth Circuit precedent provides support for weighing the factors of content, context and form differently."), *abrogated on other grounds as stated in Cuvillier v. Taylor*, 503 F.3d 397, 401 n.4 (5th Cir. 2007). Accordingly, because *Kennedy* was decided over sixteen years before *Gibson III*, the Court will weigh the factors evenly. *See Nivelo Cardenas v. Garland*, 70 F.4th 232, 242 n.7 (5th Cir. 2023) ("To the extent two panel decisions conflict, the earlier decision controls." (citation omitted)). In any event, either approach would lead to the same result in this case.

Fifth Circuit's recognition that public employees do not automatically speak as citizens 'whenever public corruption is involved.'"  Dkt. No. 27 at 10 (quoting *Gibson v. Kilpatrick* (*Gibson II*), 773 F.3d 661, 669 (5th Cir. 2014)).  The Court concludes that the content factor weighs in McCarty's favor at this stage.

For over twenty years, the Fifth Circuit has acknowledged that "speech related to improper acts by public officers qualifie[s] as a matter of public concern."  *See Branton*, 272 F.3d at 740 (citations omitted); *cf. Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999) (describing speech concerning police misconduct—which would constitute misconduct by a government employee—as being "public in content" (citation omitted)).  In the Complaint, McCarty alleges that she made the Second Post *after* Texas Governor Greg Abbott "issued an executive order requiring masking when inside a building in the state, including schools."  *See* Dkt. No. 12 ¶ 24.  Accordingly, the Court concludes that McCarty's speech is related to allegedly improper acts by public officers because it disclosed evidence of District administrators violating Governor Abbott's executive order.  *See Thompson v. City of Starkville*, 901 F.2d 456, 463 (5th Cir. 1990) (citing *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) ("Speech which discloses any evidence of . . . impropriety . . . on the part of city officials, in terms of content, clearly concerns matters of public import.")).  Therefore, although the defendants correctly acknowledge that public employees do not automatically speak as citizens whenever public corruption is involved, the Court finds McCarty's argument on this point to be persuasive, especially because McCarty has adequately alleged that she spoke as a citizen when she made the Facebook posts.[8]

---

[8] *See supra* Section 3.A.iii.a.1.

Regarding form, the defendants contend that McCarty's speech "does not indicate that [it] was on a matter of public concern" because her comments "[were] posted to a private, not public, Facebook group." *See* Dkt. No. 15 at 9 (citing *Moreau v. St. Landry Par. Fire Dist. No. 3*, 413 F. Supp. 3d 550, 561–62 (W.D. La. 2019), *aff'd*, 808 F. App'x 225 (5th Cir. 2020)).  In her response, McCarty distinguishes her allegations from the facts of *Moreau*. *See* Dkt. No. 16 at 14.  The Court finds that the form factor weighs in McCarty's favor at this stage.[9]

First, a post made to a private social-media account will not support a finding that a government employee spoke on a matter of public concern if the account fails to constitute "a public page, community board, or other place where one might make a complaint of public concern." *See Moreau*, 413 F. Supp. 3d at 562.  In *Moreau*, a district court determined that the form factor "weigh[ed] against a finding of public concern." *Id.* at 562.  There, a fire captain was terminated "because of [the] disparaging remarks" he had posted "in response to a comment by one of his Facebook friends." *Id.* at 555, 559, 562 (cleaned up). The court reasoned that the form factor weighed against the fire captain because "his comment was made . . . not on a public page, community board, or other place where one might make a complaint of public concern." *See id.* at 562.

In contrast, in *Jones*, the court concluded that a professor who posted comments critical of her employer's pandemic-reopening plan had "us[ed] her private social media account to inform the public about a matter of public concern." 623 F. Supp. 3d at 780, 790.  There, the professor "posted on a social media account" about the college's return to

---

[9] In their reply, the defendants do not attempt to rebut McCarty's counterargument pertaining to the form factor.  *See* Dkt. No. 27.  However, out of an abundance of caution, the Court nevertheless proceeds with its analysis.

in-person classes and "urged followers to 'consider emailing the college president . . . and asking for a simple solution.'"  *Id.* at 780.  The court noted that the professor "publicly engag[ed] in speech about the . . . plans to reopen" and "took her job concerns to persons outside the workplace," describing the posts as "external communications."  *Id.* at 785 (cleaned up) (quoting *Davis*, 518 F.3d at 313).  As a result, the court concluded that the professor's speech was about a matter of public concern as a citizen.  *Id.*

Unlike *Moreau*, the form factor here weighs in McCarty's favor because she has plausibly alleged that she posted her comments to a Facebook page where teachers might go to make a complaint of public concern.  Again, McCarty alleges that she posted the comments at issue to the Texas Teachers for a Safe Reopening Facebook page.  Dkt. No. 12 ¶ 24.  Additionally, she alleges that the Facebook page "was meant to be a forum for the discussion of" the safe reopening of schools across Texas.  *See id.* ¶ 23.  The Court finds it reasonable to infer that the Texas Teachers for a Safe Reopening Facebook page—which was allegedly intended to foster discussion pertaining to school reopenings following COVID-19—constitutes a "place where one might make a complaint of public concern." *See Moreau*, 413 F. Supp. 3d at 562.  Thus, the Court finds that the form factor weighs in McCarty's favor because she has plausibly alleged that—like the professor in *Jones*—she posted comments related to her employer's pandemic-reopening plan on a "private social media account to inform the public about a matter of public concern."  *See Jones*, 623 F. Supp. 3d at 790.

Finally, the Court finds that the context factor weighs in McCarty's favor because she made her Facebook posts during the COVID-19 pandemic.  Throughout their motion to dismiss and subsequent briefing, the defendants argue that McCarty's speech was made "in

the context of her employment." *See* Dkt. No. 15 at 9; *see also* Dkt. No. 27 at 10.  McCarty

responds by asserting that the context of her speech "only heightens [its] public import."

Dkt. No. 16 at 10.  The Court agrees.

First, courts that have considered First Amendment retaliation claims predicated on

a government employee's comments made in 2020 regarding the COVID-19 pandemic have

consistently found the context factor to weigh in the employee's favor.  *See Jones*, 623 F.

Supp. 3d at 790; *see also Woolslayer v. Driscoll*, No. CV 20-573, 2020 WL 5983078, at *4

(W.D. Pa. Oct. 8, 2020).  For example, in *Jones*, a district court found that "[t]he public

import of" a public university professor's social-media post "[was] underscored by its

context" when it was made in 2020 and addressed the college's reopening plan during the

COVID-19 pandemic.  *See Jones*, 623 F. Supp. 3d at 779–80, 790 (quoting *Woolslayer*, 2020

WL 5983078, at *4).  The court reasoned that the context surrounding the professor's

social-media post supported a finding that her speech addressed a matter of public concern

because her post "was sent at a time when COVID-19 had caused a statewide public health

emergency."  *See id.* at 790 (quoting *Woolslayer*, 2020 WL 5983078, at *4).  Ultimately, the

court concluded that "it is beyond debate that stopping the spread of COVID-19 was a

matter of public importance in fall 2020."  *Id.*  Similarly, in *Woolslayer*, the court found that

the context surrounding an email regarding the COVID-19 pandemic sent by a former

university employee in March of 2020 "suggest[ed] that he was speaking on a matter of

public concern."  *See Woolslayer*, 2020 WL 5983078, at *1, *4.  There, the employee sent his

email on March 30, 2020, to advise other employees "to seek medical advice" in the wake

of a colleague's exposure to COVID-19.  *Id.* at *1.  The court reasoned that the context

surrounding the employee's email "bolster[ed] the conclusion that [he] spoke on a matter of

public concern" because "it was sent at a time when COVID-19 had caused a statewide public health emergency." *Id.* at *4.

Here, the Court finds that McCarty's contextual allegations support a finding that her speech was on a matter of public concern. She alleges that she posted the comments at issue to Facebook in July 2020 and that both the First Post and the Second Post related to the COVID-19 pandemic. *See* Dkt. No. 12 ¶¶ 24–25. Accordingly, the context factor weighs in McCarty's favor because she allegedly posted comments regarding the pandemic to social media at a time when COVID-19 constituted a public health emergency. *See Jones*, 623 F. Supp. 3d at 790 (quoting *Woolslayer*, 2020 WL 5983078 at *4).

In sum, because McCarty spoke as a citizen and the content, form, and context of her posts indicate that she spoke on a matter of public concern, the Court finds that McCarty's allegations satisfy the second element of her free-speech retaliation claim.

> **b.    McCarty plausibly alleges that her protected speech motivated the defendants' decision to terminate her.**

Plaintiffs pleading First Amendment retaliation claims must also show that their protected speech motivated their employer's conduct. *See Starks*, 500 S.W.3d at 572–73. The defendants argue that McCarty "has not [pled] sufficient allegations to state a prima facie case of causation." Dkt. No. 27 at 11. In the Fifth Circuit, plaintiffs can state a prima facie case of causation by "rel[ying] upon a chronology of events from which retaliation may plausibly be inferred." *See Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013) (citing *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997)). McCarty's allegations clear this hurdle.

Precedent provides helpful examples of when retaliation may be plausibly inferred from a chronology of events because a plaintiff alleges facts that make causation "readily

apparent." *See Burnside v. Kaelin*, 773 F.3d 624, 628 (5th Cir. 2014).  In *Burnside*, the Fifth

Circuit found that it was plausible to infer causation when a sergeant claimed that he had

been unconstitutionally retaliated against after the committee he chaired failed to endorse a

sheriff in an upcoming election.  *See id.* at 625–26, 628.  There, the sergeant alleged that the

sheriff had threatened to transfer him if the committee did not endorse the sheriff.  *Id.* at

628.  The sergeant also alleged that by the time the sheriff followed through on his threat

and actually transferred him, the fact that the committee had not endorsed the sheriff "was

common knowledge."  *Id.*  The court reasoned that the sergeant's "allegations [were]

sufficient to allow a plausible inference" that the sheriff's knowledge of the committee's

refusal to endorse him caused the sergeant's transfer.  *Id.*

Additionally, in *Jones*, a district court found that a professor "ha[d] sufficiently

shown that her protected speech" motivated her employer's allegedly unconstitutional

retaliation (i.e., the nonrenewal of her teaching contract).  623 F. Supp. 3d at 780, 786.

There, the court was considering whether the professor's employer was entitled to summary

judgement.  *See id.* at 779, 783.  The court reasoned that the professor "ha[d] sufficiently

shown" causation because she provided evidence that she had an "excellent teaching

record" and that one of her superiors "believed [she] had demonstrated several

characteristics of an excellent faculty member throughout her employment."  *See id.* at 786

(cleaned up).  The defendants did not deny the professor's contract renewal until after she

"became vocal about her stances" about the college's reopening plan.  *Id.*

Here, the Court finds that McCarty pled "sufficient allegations to state a prima facie

case of causation."  In the Complaint, McCarty alleges that McClure "verbally

reprimanded" her in July 2020 after learning about her Facebook posts regarding the

– 22 –

District's masking policies.  *See* Dkt. No. 12 ¶¶ 24–25.  Additionally, McCarty claims that Teal—who she alleges knew about the posts—then excluded her from "a teambuilding exercise with all the teachers and staff."  *Id.* ¶ 26.  Furthermore, McCarty alleges that her January 2021 performance ratings "fell from . . . the two highest ratings in every dimension to . . . the two lowest ratings in every dimension, except one."  *Id.* ¶ 18 (cleaned up).  According to McCarty's allegations, these performance ratings were based on an appraisal conducted by McClure.  *See id.* ¶¶ 18, 21.  Interestingly, however, McCarty alleges that when McClure informed her of her impending termination on April 1, 2021, "she assured [McCarty] that she thought [McCarty] was a good Math teacher."  *Id.* ¶ 33.  As in *Burnside*, the Court finds that McCarty has plausibly alleged a chronology of events that makes it reasonable to infer that her Facebook posts ultimately caused her termination.  Furthermore, like *Jones*, where a professor sufficiently demonstrated causation by producing evidence of her excellent teaching record before her speech and the defendants' adverse action, McCarty's allegations make it reasonable to infer that she had an excellent teaching record prior to posting the statements.  Additionally, like the professor in *Jones*, whose superior believed she had demonstrated characteristics of an excellent faculty member, McCarty alleges that McClure assured her that she was a good math teacher.  Accordingly, the Court finds that McCarty has sufficiently alleged a prima facie case of causation because her allegations make causation "readily apparent."  *See Burnside*, 773 F.3d at 628.

   In sum, the Court finds that McCarty has pled a facially valid constitutional claim—thereby overcoming McClure's and Teal's governmental immunity—because she has alleged facts capable of supporting each element of her free-speech retaliation claim.[10]  And

---

[10] *See supra* note 6.

precedent undermines the defendants' assertion that McCarty's claim must fail nevertheless because it seeks an inappropriate remedy.  Specifically, the defendants assert that "[t]o the extent [McCarty] proposes that her reinstatement . . . would be the mechanism by which Defendants would cease violating her rights, her *ultra vires* claim fails because reinstatement is considered retrospective relief."  Dkt. No. 27 at 7–8 (italics added) (first citing *Ochoa v. City of Palmview*, No. 13-14-00021-CV, 2014 WL 7404594, at *7 (Tex. App.—Corpus Christi–Edinburg June 19, 2014, no pet.); and then citing *Bracey v. City of Killeen*, 417 S.W.3d 94, 114 (Tex. App.—Austin 2013, no pet.)).  However, this assertion conflicts with the Fifth Circuit's recognition that "the great weight of case authority clearly supports treating reinstatement as an acceptable form of prospective relief."  *See Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 322 (5th Cir. 2008).[11]  Additionally, while the court in *Ochoa v. City of Palmview* found that a plaintiff's "request for reinstatement constituted a demand for retroactive relief," 2014 WL 7404594 at *7, the court in *Bracey v. City of Killeen* acknowledged a distinction between retrospective and prospective reinstatement.  *See Bracey*, 417 S.W.3d at 114 (noting that a plaintiff bringing an *ultra vires* claim could seek "injunctive relief to compel prospective compliance with [a state law]—i.e., to reinstate [the plaintiff] going

---

[11] Although *Nelson v. University of Texas at Dallas* is an *Ex parte Young* case, *see Nelson*, 535 F.3d at 320, the Court still recognizes the Fifth Circuit's conclusion pertaining to reinstatement in the context of this case.  In *Nelson*, the court explained that *Ex parte Young* "created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities."  *Id.*  However, the *Ex parte Young* doctrine does not directly apply to McCarty's case because independent school districts are protected not by Eleventh Amendment sovereign immunity but rather by the "distinct concept of governmental immunity."  *See Gonzales v. Mathis Indep. Sch. Dist.*, 978 F.3d 291, 296 n.18 (5th Cir. 2020) (citation omitted).  "Nevertheless, the Texas Supreme Court has recognized and compared the *Ex p[arte Young* doctrine to state-court *ultra vires* proceedings."  *Schraer v. Tex. Health & Hum. Servs. Comm'n*, No. 13-12-00702-CV, 2014 WL 586036, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 13, 2014, no pet.) (describing how the Texas Supreme Court in *Heinrich* used the *Ex parte Young* doctrine to establish the contours of the *ultra vires* exception).  Accordingly, *Nelson* is applicable to McCarty's free-speech retaliation claim.

forward from the time of judgment"). Accordingly, because the defendants have failed to establish why McCarty's request for reinstatement constitutes retrospective relief—and given the Fifth Circuit's conclusion regarding reinstatement in *Nelson*—the Court concludes that McCarty's claims under the Texas Constitution survive the motion to dismiss.[12]

### B.   McCarty's Section 1983 claims survive dismissal.

#### i.   McCarty's Section 1983 claims against McClure and Teal survive the defendants' motion to dismiss.

In addition to her state law claims, McCarty also asserts First Amendment retaliation claims against McClure and Teal in their individual capacities under 42 U.S.C. § 1983. *See* Dkt. 12 ¶¶ 59–67. The defendants contend that these claims should be dismissed because McClure and Teal are entitled to qualified immunity. Dkt. No. 15 at 6. And the defendants correctly point out that "[w]hen a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Crostley v. Lamar County*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). At the motion-to-dismiss stage, courts ask "(1) whether a plaintiff alleges or shows the violation of a federal constitutional or statutory right; and (2) whether the right in question was clearly established at the time of the alleged

---

[12] The defendants argue that "even if [McCarty's] claims under the Texas Constitution are not dismissed based on lack of jurisdiction, they should be dismissed for failure to state a claim." Dkt. No. 15 at 8 n.3. However, because the Court is required to adhere to many of the same procedural standards when considering motions to dismiss made under either Rule 12(b)(1) or 12(b)(6), the Court's conclusion remains the same. *See Ghedi v. Mayorkas*, 16 F.4th 456, 463–64 (5th Cir. 2021) ("[T]he same plausibility standard that applies in the Rule 12(b)(6) context also applies to Rule 12(b)(1)." (citations omitted)). *Compare Haverkamp v. Linthicum*, 6 F.4th 662, 668–69 (5th Cir. 2021) ("On a motion to dismiss for lack of jurisdiction, all well-pleaded facts are taken as true and all reasonable inferences must be made in the plaintiff's favor." (citation omitted)), *with Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021) (describing a motion to dismiss for failure to state a claim and noting that "[t]he court accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor" (citation omitted)).

violation." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (footnote omitted) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  Accordingly, because the Court has already determined that McCarty has sufficiently alleged facts demonstrating that McClure and Teal violated her First Amendment rights, the Court need only address whether McCarty's constitutional rights were clearly established at the time of the alleged misconduct, rendering the conduct objectively unreasonable.  *See id.* at 133–34.  The defendants argue that "[t]here is no authority clearly establishing" that McCarty's Facebook posts "w[ere] protected by the First Amendment" at the time of McClure's and Teal's misconduct.  *See* Dkt. No. 27 at 14–15.  The Court disagrees.  As explained below, McCarty's plausible allegations survive dismissal.

"The central concern" in determining whether a plaintiff's constitutional rights were clearly established at the time of a defendant's misconduct "is whether the official ha[d] fair warning that his conduct violate[d] a constitutional right."  *See Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018) (citing *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016)).  Additionally, "[t]he law can be clearly established despite notable factual distinctions between the precedents relied on and the [present] case[]." *Cooper*, 844 F.3d at 524 (quoting *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)).

Here, each key aspect of McCarty's asserted constitutional right was clearly established.  First, the Supreme Court has long held that teachers retain the "First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (citations omitted).  Second, Fifth Circuit precedent acknowledges that "the physical safety and well-being of . . . school children" is

an "important . . . issue for public scrutiny." *Swilley v. Alexander*, 629 F.2d 1018, 1021 (5th Cir. 1980).  The Fifth Circuit has also stated that "[s]peech that potentially affects public safety relates to the public concern," *Kennedy v. Tangipahoa Par. Libr. Bd. of Control*, 224 F.3d 359, 373 (5th Cir. 2000), *abrogated on other grounds as stated in Cuvillier v. Taylor*, 503 F.3d 397, 401 n.4 (5th Cir. 2007), and it has held that government employees speaking out about government officials "ignoring health violations" constitutes a matter of public concern, *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  Third, the Fifth Circuit has held that a plaintiff's "Facebook post was constitutionally protected by the First Amendment" and denied qualified immunity because, by March 2020, it was "clearly established that [the] Facebook post did not fit within one of the narrow categories of unprotected speech." *Bailey v. Iles*, 78 F.4th 801, 805, 808, 814 (5th Cir. 2023); *see also Packingham v. North Carolina*, 582 U.S. 98, 105, 107 (2017) (noting that "social media users employ these websites to engage in a wide array of protected First Amendment activity" and describing social media as "the modern public square").  Finally, "a teacher's exercise of [her] right to speak on issues of public importance may not furnish the basis for [her] dismissal from public employment." *Pickering*, 391 U.S. at 574.  "Terminating an employee for engaging in protected speech . . . is an objectively unreasonable violation of such an employee's First Amendment rights." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).  Thus, a teacher's right to speak about public health and safety concerns at her school using social media without being fired is clearly established.

At least one other district court in the Fifth Circuit has reached the same conclusion. In *Jones*, a district court concluded that by January 2021, a public university professor "had a clearly established right" to be free from employer retaliation predicated on her use of a

"private social media account" to express concerns related to her employer's post-COVID-19 policies. *See Jones*, 623 F. Supp. 3d at 779–81, 784, 791.  There, the professor asserted First Amendment retaliation claims and provided evidence that she suffered an adverse employment action after making a social-media post "in dissenting response" to her employer's pandemic-reopening plan. *See id.* at 783–84.  The court cited multiple cases to support its conclusion that by January 2021 it was "beyond debate" that government employees had a "clearly established right" to use social media to engage in constitutionally protected speech regarding COVID-19.  *See id.* at 790–91 (first citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); then citing *Swilley*, 629 F.2d at 1021; then citing *Woolslayer*, 2020 WL 5983078, at *4; then citing *Liverman v. City of Petersburg*, 844 F.3d 400, 408 (4th Cir. 2016); then citing *Charles*, 522 F.3d at 511; and then citing *Zuniga v. Yeary*, No. 18-CV-434, 2020 WL 572724, at *6 (W.D. Tex. Feb. 5, 2020), *report and recommendation adopted*, 2020 WL 1329908 (W.D. Tex. Mar. 20, 2020)).

Here, the defendants' argument that "[t]here is *no* authority clearly establishing" that McCarty's Facebook posts "w[ere] protected by the First Amendment" at the time of McCarty's termination in April 2021, *see* Dkt. No. 27 at 14–15 (emphasis added), is refuted by cases like *Kennedy*, *Jones*, and similar authority.  McCarty alleges that she posted the comments at issue to a group's private Facebook page in July 2020 before being terminated by the District in April 2021.  *See* Dkt. No. 12 ¶¶ 22, 24–25, 35.  Additionally, viewing the allegations of the Complaint in the light most favorable to McCarty and drawing all reasonable inferences in her favor, both the First Post and the Second Post raised concerns about her employer's post-COVID-19 masking policies and public health.  *See id.* ¶ 24. Accordingly, the Court concludes—as the court in *Jones* did—that McCarty's First

Amendment right to use a private Facebook page to post comments critical of her employer's post-COVID-19 policies was clearly established at the time of McClure's and Teal's alleged misconduct.  *See Pickering*, 391 U.S. at 568; *Swilley*, 629 F.2d at 1021; *Kennedy*, 224 F.3d at 373; *Wallace*, 400 F.3d at 289; *Bailey*, 78 F.4th at 814.  Therefore, McCarty has alleged facts sufficient to meet her burden of demonstrating the inapplicability—at least at this stage—of qualified immunity.

> ### ii.     McCarty's Section 1983 claim against the District survives the defendants' motion to dismiss.

Lastly, McCarty asserts claims against the District under Section 1983.  *See* Dkt. No. 12 ¶¶ 62–65, 67.  Specifically, McCarty asserts these claims under a *Monell* theory of liability.  *See* Dkt. No. 16 at 26.  In their motion to dismiss, the defendants argue that McCarty has "failed to sufficiently plead a *Monell* liability claim against" the District.  *Id.* (citing Dkt. No. 15 at 13).  In the Fifth Circuit, it is firmly established that an independent school district may be held liable under a *Monell* theory of liability if a plaintiff "demonstrate[s] that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'"  *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1011 (5th Cir. 2023) (quoting *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017)).  At the motion-to-dismiss stage, however, "plaintiff[s] need only plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker."  *See id.* (quoting *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016)).  "In other words, plaintiffs must plead facts that sufficiently connect the policymaker . . . to the allegedly unconstitutional policy . . . ."  *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (citing *Groden*, 826 F.3d at 284, 286).

McCarty asserts that she has pled facts sufficient to connect the policymaker (i.e., the District's Board of Trustees)[13] to the allegedly unconstitutional policy (i.e., the vote to terminate her employment with the District).  *See* Dkt. No. 16 at 27 (citing Dkt. No. 12 ¶ 35).  Conversely, the defendants argue that McCarty's pleadings are insufficient because she has failed to allege facts demonstrating that the District's Board of Trustees "knew about her allegedly protected speech" prior to voting on her termination in April 2021.  *See* Dkt. No. 27 at 17.

First, plaintiffs asserting retaliation claims against an independent school district must plausibly allege that the district's board of trustees had "actual knowledge" of the allegedly protected activity.  *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 603–04 (5th Cir. 2001).  For example, in *Beattie*, the Fifth Circuit refused to impose *Monell* liability on a school district when the district's board of trustees "had no actual knowledge" of the plaintiff's campaign activities.  *See id.* at 599, 603–04.  There, the plaintiff—a former secretary for the school district—brought a First Amendment retaliation claim against the district, alleging that she had been unconstitutionally retaliated against for her campaign activities related to an upcoming election for superintendent.  *Id.* at 599–600.  The court reasoned that because "there [was] no evidence that the board knew of the protected activity, [the former secretary could not] show that the activity motivated retaliatory behavior."  *See id.* at 604 (citation omitted).

---

[13] "[W]hether a particular official has 'final policymaking authority' is a question of *state law*." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (citation omitted).  Under Texas law, an independent school district's "policymaker" is its board of trustees. *See Longoria*, 942 F.3d at 271; *see also McClelland*, 63 F.4th at 1011.

Here, McCarty has failed to allege facts demonstrating that the District's Board of Trustees knew about her Facebook posts prior to voting on her termination in April 2021. McCarty claims to have alleged that the District's Board of Trustees knew about her Facebook posts because in the Complaint, she "posit[ed] a conspiracy." Dkt. No. 16 at 27 (citation omitted). However, as pointed out by the defendants, McCarty actually alleges that the District conspired with McClure and Teal to take "adverse employment action" against her (i.e., that the District, McClure, and Teal conspired to terminate McCarty). *See* Dkt. No. 27 at 16; *see also* Dkt. No. 12 ¶ 67. These allegations do not include a claim that the District was aware of McCarty's Facebook posts prior to terminating her. Accordingly, although the District's knowledge of the Facebook posts "may be alleged generally," Fed. R. Civ. P. 9(b), the Complaint in its current form fails to produce a plausible inference that the Board was aware of the Facebook posts.

On the other hand, an exception to this rule applies when "the final policymaker's decision is merely a 'rubber stamp.'" *Beattie*, 254 F.3d at 604 n.14. Specifically, an employee can avoid the actual-knowledge requirement if she "can demonstrate that [a] subordinate's evaluation was tainted by an illegal intent and that [the subordinate] had sufficient influence or leverage over the ultimate decisionmaker." *See id.* (citing *Rios v. Rossotti*, 252 F.3d 375, 381–82 (5th Cir. 2001)). For example, in *Smith v. City of Madison*, a district court concluded that summary judgment on a former government employee's First Amendment retaliation claim—which was predicated on a *Monell* theory of liability—was inappropriate when she "ha[d] produced sufficient evidence from which a properly instructed jury could find that the [policymaker] merely rubber stamped [a subordinate's] allegedly tainted termination recommendation." 364 F. Supp. 3d 656, 659, 664–65 (S.D.

Miss. 2018).  There, the former government employee asserted that she was unconstitutionally terminated from her job in retaliation for exercising her First Amendment right to free speech.  *Id.* at 659.  Specifically, she claimed that she was terminated "because the Mayor believed that [she] was campaigning for . . . a political rival."  *Id.*  The court reasoned that the former government employee's claim fell under the rubber-stamp exception because she produced evidence that the mayor had recommended her termination without providing an explanation and that "personnel terminations were typically carried out this way."  *See id.* at 664–65.

Viewing the well-pleaded facts as true and in the light most favorable to McCarty, as the Court must at this stage, the rubber-stamp exception is applicable here.  McCarty's allegations create a reasonable inference that the District's Board of Trustees voted to terminate her—based on McClure and Teal's recommendation—without being informed of their allegedly retaliatory motives.  In the Complaint, McCarty alleges that the District's Board of Trustees "acted on the recommendations of Superintendent Teal and Principal McClure, not on their own accord, by voting to adopt the recommendation of Teal and McClure to terminate [her]."  Dkt. No. 12 ¶ 34.  Additionally, McCarty alleges that "[i]f there was a discussion of the merits of the recommendation to terminate [her] before it was adopted, neither [she] nor anyone representing her interest" participated in that discussion. *Id.*  Furthermore, McCarty alleges that the District's Board of Trustees "terminated more than one contract based on Teal's recommendation."  *Id.*  Like *Smith*, McCarty's allegations make it reasonable to infer that the District's Board of Trustees adopted McClure and Teal's

recommendation without McClure or Teal providing an explanation.[14]   Similarly, McCarty's allegations make it reasonable to infer that the District's Board of Trustees typically carries out personnel terminations this way.  Accordingly, viewing McCarty's well-pleaded facts in the light most favorable to her, the Court concludes that her Section 1983 claim against the District falls under the rubber-stamp exception and survives the defendants' motion to dismiss.

4.      **Conclusion**

In conclusion, the Court finds that McCarty has sufficiently pled (1) her state law claims under the Texas Constitution; (2) her Section 1983 claims against McClure and Teal; and (3) her Section 1983 claim against the District.  Accordingly, these claims survive the defendants' motion to dismiss.  However, the Court also finds that McCarty has failed to meet her "burden of 'alleg[ing] a plausible set of facts'" that would establish the Court's jurisdiction as to her appraisal and censorship claims.  *See Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021) (quoting *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021)).  Accordingly, the Court dismisses these claims.  The defendants' motion to dismiss (Dkt. No. 15) is thus granted in part and denied in part.

So ordered on September 27, 2023.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[14] During discovery, the defendants could produce evidence demonstrating that McClure and Teal provided the District's Board of Trustees with an explanation as to their recommendation. However, given that the present case is still in the motion-to-dismiss stage, the defendants' potential ability to produce evidence contrary to McCarty's allegations does not alter the Court's conclusion at this point.